FILED

2024 Sep-30  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GARY WAYNE WRIGHT, II,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:22-cv-00615-RDP** |
| | } | |
| **MARSHALL COUNTY ALABAMA, et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendants Marshall County, Alabama's ("Marshall County") and Marshall County Sheriff Phil Sims's Motion for Summary Judgment. (Doc. # 54). The parties have fully briefed the Motion. (Docs. # 55, 56, 59, 60). For the reasons explained below, Defendants' Motion for Summary Judgment is due to be granted.

## I.     Background and Procedural History

Plaintiff Gary Wayne Wright II ("Plaintiff") is a disabled veteran and long-time resident of Marshall County, Alabama who describes himself as "an activist who frequently gives speeches, meets with elected officials, and attends peaceful protests throughout the area." (Doc. # 44 ¶¶ 14, 15, 17). In the past, Plaintiff has peacefully protested at various courthouses, both in and outside Marshall County. (*Id.* ¶ 19).

Plaintiff claims that his efforts to protest were stymied after Marshall County enacted a Picketing Resolution ("2020 Resolution") on December 20, 2020 (*id.* ¶ 6), and again after the County enacted a second Picketing Resolution ("2023 Resolution") on July 26, 2023. (*Id.* ¶ 36). The 2020 Resolution prohibits "picketing" inside the Marshall County Courthouses in Albertville and Guntersville, Alabama, and requires those who wish to picket outside of these courthouses to

picket to apply for a permit. (Doc. # 44 at 17-20). The 2023 Resolution prohibits picketing in and around other County property, including:

> [A]t, near, or proximately around the Marshall County Animal Control Shelter, the County Commission District Offices, the Marshall County Sheriff's Office, the Marshall County Jail, the Marshall County District Attorney Annex, the Marshall County Probate Office Annexes, and any other property owned, operated, and/or maintained by the County Commission which is not open to the general public.

(Doc. # 44 at 24).

Plaintiff claims that the "Resolutions are unconstitutionally vague as written, and were solely intended to abridge, burden, and chill the exercise of the civil rights of local citizens." (*Id.* ¶ 9). Plaintiff argues that "[b]ecause of [his] disabilities, the inaccessibility of these locations for the disabled, and the over-reaching restrictions of the [2020 and 2023] Picketing Resolutions, he has been unable to freely exercise his civil rights in Marshall County since he became aware of the Resolutions." (*Id.* ¶ 29). Plaintiff has identified several dates on which he wished to protest but was unable to do so because of the Resolution. (*Id.* ¶¶ 31-34). Additionally, Plaintiff asserts that the 2020 Resolution "was created and passed out of animus" (*id.* ¶ 28), that both the 2020 and 2023 resolutions "specifically target political speech and voices of dissent" (*id.* ¶ 37), and that the Resolutions "do not allow for [] rapid-response organizing, and are an egregious government overreach by placing unnecessary restrictions on the free exercise of civil rights." (*Id.* ¶ 21). Specific to Plaintiff's Freedom of Speech claim, Plaintiff argues that "[t]he Resolutions unlawfully regulate the time, place, duration, and manner of constitutionally protected speech and assembly in a public forum." (*Id.* ¶ 60).

Plaintiff has sued Defendants Marshall County and Sheriff Phil Sims in his official capacity. (Doc. # 44).[1] He asserts three counts against these Defendants: Count One (Violation of

---

[1] Pursuant to an Order of Dismissal (Doc. # 33), the court previously dismissed Plaintiff's claims against other defendants, including Marshall County Commission Chairman James Hutcheson, Marshall County District 1

the First Amendment Right to Freedom of Speech), Count Two (Violation of the First Amendment Right to Peaceably Assemble), and Count Three (Violation of the First Amendment Right to Petition the Government for Redress of Grievances). Plaintiff requests relief in the form of a declaratory judgment that Defendants' actions have deprived him of his rights under federal law, an injunction prohibiting Defendants from committing future violations of rights under federal law, compensatory and statutory damages of $10,000, punitive damages of $5,000 from each Defendant in their official capacity, and costs, fees, time, and expenses for litigation. (Doc. # 44 ¶¶ 78-82).

Defendants argue that the process enacted by the 2020 Resolution is "explicitly content-neutral." (Doc. # 54 ¶ 9). Defendants also argue that the interior of courthouses and the areas in and around the buildings covered by the 2023 Resolution are nonpublic forums, and thus the First Amendment only requires that regulations of expressive activity in these areas be "reasonable, i.e., [] not arbitrary and capricious." (Doc. # 54 ¶ 6). Defendants characterize the exterior areas of the Guntersville and Albertville courthouses as limited public forums, and thus argue that the First Amendment only requires that "content-neutral time, place, and manner regulation[s]" of expressive activity in these areas be "reasonable." (*Id.* ¶¶ 7-8). Defendants further contend that both Resolutions are "reasonable" because they serve the government's "significant legitimate interest in ensuring public safety by preventing violent clashes between opposing groups." (*Id.* ¶¶ 6, 10). Finally, Defendants assert that "the Resolutions are not unconstitutionally vague," and that "Plaintiff does not have standing to challenge the Resolutions on vagueness grounds." (*Id.* ¶ 11).

---

Commissioner Ronny Shumate, Marshall County District 2 Commissioner Rick Watson, Marshall County District 3 Commissioner Lee Sims, Marshall County District 4 Commissioner Joey Baker, Marshall County Commission Attorney Clint Maze, and Marshall County Commission Secretary Rhonda McCoy.

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party

bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson* 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.   Factual Background

The court has gleaned the facts set out in this opinion from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of Plaintiff, the nonmoving party. *See Info. Sys. & Networks Corp. v. City*

*of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" presented by the Rule 56 record. They may not be the actual facts that could be established through live testimony or at a trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

### A.      2020 Resolution

On December 20, 2020, Marshall County passed the 2020 Resolution, prohibiting "picketing" inside the Marshall County Courthouses in Albertville and Guntersville, Alabama, and requiring those who wished to picket "in or around the exterior portions or courtyards" of these courthouses to apply for a permit for each day that they wish to picket. (Doc. # 44 ¶ 6; *id.* at 17-20). The 2020 Resolution further requires that the picketing "not interfere with the daily operations of government." (*Id.* at 17). The Resolution defines "picketing" as "the peaceful patrolling activity or demonstration by any individuals, groups, or organizations, often including chanting; the use of signs, banners, or flags to convey a message; or handing out flyers, pamphlets, brochures, or leaflets." (*Id.* at 17).

To register for a picketing permit, the 2020 Resolution requires that an individual "provide, in writing" their name, address, phone number, emergency contact information, and desired time, day, and duration of the picketing activity. (*Id.* at 18). A group or organization must additionally provide their group or organization name, the number of people expected to participate in the picketing, and the name and contact information of the group spokesperson. (*Id.*). Although the Office of the Marshall County Chairman provides registration forms, the 2020 Resolution does not require this form, provided that the required information is supplied in writing. (*Id.*).

The 2020 Resolution specifies that the "opportunity to Register shall be made available during normal business hours at the Office of the Marshall County Chairman," and allows registration on the same day as the proposed picketing activity. (*Id.* at 17). The 2020 Resolution

also directs that the Marshall County Commission Chairman "shall issue a permit . . . upon finding the following: . . . [n]o other individual, group, or organization has received a Picketing permit for the same time, day, and location . . . [and] [t]he Picketing sought to be permitted will comply with the standards, rules, and minimum requirements of this Resolution." (*Id.* at 18-19). The 2020 Resolution notes that permits will be issued on a "first come[,] first serve[d] basis," but allows the Marshall County Commission Chairman to "exercise objective, nonbiased adjustments in the event one individual, group, or organization has not had an equal opportunity to engage in Picketing due to conflicts. Said individual, group, or organization who has not had an equal opportunity to engage in Picketing may be given priority for a given date and time over the first registrant to Register to engage in Picketing on the same time, day, and location." (*Id.* at 19).

The 2020 Resolution limits each picketing permit to three consecutive days or six nonconsecutive days and specifies that no permits will be issued for picketing outside of the hours of 6:00 a.m. and 8:00 p.m. Central Time. (*Id.*). Finally, the 2020 Resolution directs that "[i]ssuance decisions shall be made as soon as reasonably possible, but no later than seventy-two hours [] from the time the initial Permit application is submitted," providing that permits will be automatically granted if more than seventy-two hours passes without issuance. (*Id.*).

Finally, the 2020 Resolution outlines rules for picketing, requiring picketers to wear badges issued by the Marshall County Commission Chairman, and prohibits picketers from:

- blocking entrances or exits to the courthouse;
- using sound or voice amplification or musical instruments;
- affixing signs or other material used in picketing to the exterior of buildings, monuments, or fences;
- including more than thirty people at a time in picketing;
- having weapons while picketing;
- erecting structures while picketing;
- picketing within twenty-one feet of the courthouse exterior;
- standing on or damaging monuments on courthouse grounds or coming within areas zoned off around those monuments; and

- using chalk, paint, spray paint, or any other instrument or material to leave markings on the courthouse building, sidewalks, or monuments.

(*Id.* at 19-20). The 2020 Resolution authorizes enforcement of the Resolution "through warnings," removal of a person from courthouse grounds, or in the event of violence dispersion of the crowd. (*Id.* at 20).

There is undisputed evidence that Marshall County Commission Chairman has approved multiple picketing permits and has never denied any requests for a permit. (Docs. # 54 at 2; 55-9 at 2-11). The first permit was requested and issued on December 9, 2020 (Doc. # 55-9 at 2), and since then up to six non-consecutive dates have been approved for a single permit to a single group. (*Id.* at 5).

The Albertville Courthouse is a small building, has some green space in front of it and on two sides, and a narrow sidewalk passing in front of it that connects with a perpendicular walkway leading into the front entrance of the courthouse. (Doc. # 55-5 at 2). There is a fenced-off area with flags, a monument for veterans who served in World War I, World War II, the Korean War, and the Vietnam War, and a monument for confederate soldiers. (*Id.* at 3; Doc. # 55-10 at 2). The Guntersville courthouse complex contains a public restaurant as well as an atrium where the County Commissioner sometimes sits at a "Commissioner's Table" to meet with the public. (Doc. # 59 ¶ 6). It also contains public offices and courtrooms. (*Id.*).

Plaintiff asserts that the 2020 Resolution "was created and passed out of animus" and that it specifically was passed after Marshall County Commission Secretary Rhonda McCoy "assaulted a protester during a peaceful sit-in demonstration at the Marshall County Courthouse cafeteria." (*Id.* ¶ 27). According to Plaintiff, the 2020 Resolution was passed "to defend the unlawful actions of [Marshall County's] employee." (*Id.* ¶ 28). Plaintiff further asserts that "[p]eaceful protests at the courthouses led to the first resolution." (*Id.* ¶ 38).

8

After Plaintiff made this assertion in his Amended Complaint, Plaintiff issued an Interrogatory to Defendants asking Defendants to identify the "primary motivating factors for passage" of the 2020 Resolution. (Doc. # 52 ¶ 2). In response to that Interrogatory, Defendants explained that the "2020 Resolution was enacted in the wake of the violent counter protest by Sons of the Confederacy against Black Lives Matter protesters after the death of Travis Banks in the Guntersville City Jail." (Doc. # 55-4 at 2). Defendants also noted that they were concerned about space constraints in the event of multiple protests at the same time, as well as the potential for violence due to "[t]he increase in reports from around the nation of violence occurring in such protests/counter-protests." (*Id.*). Plaintiff has not subsequently disputed or attempted to rebut Defendants' characterization of the primary motivation of the 2020 Resolution. (*See* Doc. # 59).

On April 8, 2022, Plaintiff sent a letter entitled "Writ To Cure" to the Marshall County Commission explaining Plaintiff's belief that the 2020 Resolution "is in direct violation of the First Amendment," and threatening to "seek further remedies against the county and commission." (Doc. # 44 at 15). Plaintiff also spoke on this matter at a Marshall County Commission meeting, on May 11, 2022, and discussed this matter privately with Marshall County Chairman James Hutcheson, on April 27, 2022. (Doc. # 44 ¶¶ 51-52).

### B.    2023 Resolution

The second resolution was passed on July 26, 2023 (Doc. # 44 ¶ 7), and prohibits picketing in and around other County property, including:

> [A]t, near, or proximately around the Marshall County Animal Control Shelter, the County Commission District Offices, the Marshall County Sheriff's Office, the Marshall County Jail, the Marshall County District Attorney Annex, the Marshall County Probate Office Annexes, and any other property owned, operated, and/or maintained by the County Commission which is not open to the general public.

(Doc. # 44 at 24). The 2023 Resolution excluded from this prohibition "any County owned, operated, and/or maintained parks, sidewalks, areas the County Commission has designated as public forums, or any traditionally public forums as defined by applicable law." (*Id.* at 24).

Plaintiff's Amended Complaint alleges that the 2023 Resolution language "makes it clear that the two resolutions specifically target political speech and voices of dissent." (*Id.* ¶ 37). More specifically, Plaintiff alleges that "peaceful protests being organized at the county animal shelter and other county locations prompted the 2023 Resolution." (*Id.* ¶ 38).[2] Defendants also addressed their reason for enacting the 2023 Resolution in Plaintiff's Interrogatories and Defendants' responses to those. In their responses, Defendants stated that the motivation for passing the 2023 Resolution was to "make it clear after the break-in at the Animal Shelter that certain County properties are not generally open to the public for all purposes," to "ensure the continued provision of services at locations that are not public forums," to avoid requiring those in buildings like the County Jail to "bear witness to the protest," and to protect animals at the County Animal Shelter from being upset by loud noises and crowds. (Doc. # 55-4 ¶ 2). Plaintiff has not disputed that this was Defendants' primary motivation for passing the 2023 Resolution. (*See* Doc. # 59).

The Marshall County Sheriff's Office and Building and Maintenance Department, which are covered by the 2023 Resolution, are enveloped by streets and a parking lot, but do not contain a lawn or other green space in which it would be possible to picket. (Doc. # 55-6 at 2). There are public streets and sidewalks nearby. (*Id.*).

### C.    Plaintiff's Activities

Plaintiff avers that he "is an activist who frequently gives speeches, meets with elected officials, and attends peaceful protests throughout the area." (Doc. # 44 ¶ 17). Plaintiff alleges that

---

[2] Plaintiff's Amended Complaint includes footnotes citing to three websites that discuss these protests, but this quotation taken from the Complaint omits similar footnotes.

"on several dates prior to the [2020 and 2023] Picketing Resolutions" he had "protested at the Marshall County courthouse and numerous other county facilities in Guntersville, Alabama." (*Id.* ¶ 25). Plaintiff also asserts, in response to Defendants' Interrogatories served on him, that "[e]very location on the courthouse protest route used by the Plaintiff (such as the county jail and administrative buildings) was covered by the 2023 Resolution." (Doc. # 55-3 ¶ 15). Plaintiff desires to engage in activism, and asserts that "due to the unnecessary procedures and limits of the 2020 Picketing Resolution," he "was unable to protest" on April 8, 2022, on April 13, 2022, during the first week of May 2022, and in June 2022. (*Id.* ¶¶ 31-34). Plaintiff did, however, protest on March 13, 2021 at the Albertville Marshall County Courthouse – and Plaintiff has included pictures and video footage from this protest in the record. (Docs. # 55-1 at 2-4; 55-11). Plaintiff notes in response to Defendants' Interrogatories that "[p]rior to learning about the Picketing Resolution, the Plaintiff has unknowingly protested under the picketing permits obtained by others."[3] (Doc. # 55-3 ¶ 6). Plaintiff concedes in a response to Defendants' Interrogatories that he never applied for a picketing permit (Doc. # 55-3 ¶ 6), and Plaintiff characterizes his refusal to apply for a permit as "a matter of principle." (Doc. # 59 ¶ 2).

## IV.   Analysis

Once again, Plaintiff brings three causes of action against Defendants: Count One (Violation of the First Amendment Right to Freedom of Speech), Count Two (Violation of the First Amendment Right to Peaceably Assemble), and Count Three (Violation of the First Amendment Right to Petition the Government for Redress of Grievances).

---

[3] In Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff disputes that he "refrain[ed] from knowingly participating in protests that were permitted," arguing that he "has participated in several protests in Montgomery since the filing of this case, and the Plaintiff has even participated in Albertville and Guntersville protests that were covered by a permit obtained by the event organizer of the protest." (Doc. # 59 ¶ 2).

The issues related to each of these claims that are analyzed below fall into three categories: (1) as a threshold matter, whether Plaintiff lacks standing to bring his void for vagueness claim; (2) whether Plaintiff can rebut Defendant's showing that a facial challenge to the 2020 and 2023 Resolutions is unmerited here, as the resolutions do not vest unbridled discretion in a decisionmaker and also do not sweep too broadly; and (3) whether Plaintiff's claims fail on the merits because the 2020 and 2023 Resolutions regulate activities in nonpublic and limited public forums and pass the relevant legal test for those forum types. The court addresses each of these questions below.

### A.    Standing in Void for Vagueness Claim

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Id.* Defendants only dispute Plaintiff's standing to bring the facial vagueness challenge. In asserting that claim, Plaintiff argues that "[t]he [2020 and 2023] Resolutions are unconstitutionally vague as written." (Docs. # 44 ¶ 9; 56 at 18). Defendants counter that "[a] facial vagueness challenge cannot be maintained by one to whom a statute may be constitutionally applied." (*Id.*) (citing *United States v. Pugh*, 90 F.4th 1318, 1333 (11th Cir. 2024)). Defendants further contend that Plaintiff cannot assert a facial vagueness claim under this standard because "Plaintiff admits that he participated in permitted protests, meaning that whatever vagueness existed did not prohibit him or the group with which he was protesting from exercising their First Amendment rights." (*Id.*).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. But not all disputes that might be termed "cases" or

"controversies" in the colloquial sense count as Article III cases and controversies. The doctrine of standing serves to identify those disputes which qualify as Article III cases and controversies – that is, "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiff generally alleges that "[t]he [2020 and 2023] Resolutions are unconstitutionally vague as written, and were solely intended to abridge, burden, and chill the exercise of the civil rights of local citizens." (Doc. # 44 ¶ 9). In responses to Defendants' Interrogatories, Plaintiff clarifies that "[t]he Picketing Resolution is too vague in several ways, including but not limited to, stating that picketing permits may not be obtained for 'more than six nonconsecutive days' reads as if that is a per lifetime limit . . . the use of terms such as '*in and around*' and "*near*" is too broad and subjective." (Doc. # 55-3 ¶ 6) (emphasis in original). Plaintiff does not allege this in connection with any specific count, but for purposes of considering standing, the court construes this as a claim of "void for vagueness" under the Due Process Clause of the Fourteenth Amendment. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). It is a "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Id.* A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)).

To have standing to pursue a void for vagueness challenge, a plaintiff must show that he did *not* engage in conduct that an enactment clearly proscribes. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010). Regarding the 2020 Resolution, Plaintiff has alleged (and Defendants have not challenged) that "due to the unnecessary procedures and limits of the 2020 Picketing

13

Resolution," he "was unable to protest" on April 8, 2022, on April 13, 2022, during the first week of May 2022, and in June 2022. (*Id.* ¶¶ 31-34). Plaintiff acknowledges he did, however, protest on March 13, 2021, at the Albertville Marshall County Courthouse, although he suggests that he may have done this "unknowingly." (*See* Doc. # 55-3 ¶ 6). Plaintiff has certainly given inconsistent responses about whether he knew that this picketing was covered by a permit.[4] But, *Holder* does not require a plaintiff's conduct to be done knowingly; it is enough if it was done. *See* 561 U.S. at 20. Plaintiff's knowledge of the permit is thus not material in determining whether he has standing to pursue a void for vagueness claim.

Because Plaintiff did engage in conduct that the 2020 Resolution proscribes, the only question is whether the 2020 Resolution "clearly proscribes" Plaintiff's March 2021 picketing. First, the court must consider whether the limit on issuing "Permits that exceed a duration of three (3) consecutive days or six (6) nonconsecutive days" is unclear in how it would operate to proscribe Plaintiff's conduct. This provision is directed to the "Marshall County Commission Chairman," and thus cannot be deemed void for vagueness under the Due Process Clause as it does not proscribe any potential conduct by Plaintiff. If, for example, Plaintiff submitted a permit application that requested more than three consecutive or six nonconsecutive days of picketing, the Chairman would simply deny that application. Plaintiff would suffer no criminal or other consequences, and thus, Plaintiff has no standing to challenge this provision.

Second, "the use of terms such as '*in and around*' and '*near*'" is not vague. (Doc. # 55-3 ¶ 6) (emphasis in original). The language of the 2020 Resolution states that permits are required

---

[4] Plaintiff claimed that "[p]rior to learning about the Picketing Resolution, [he] has unknowingly protested under the picketing permits obtained by others" (Doc. # 55-3 ¶ 6), but Plaintiff's Response to Defendants' Motion for Summary Judgment claims that he "has participated in several protests in Montgomery since the filing of this case, and the Plaintiff has even participated in Albertville and Guntersville protests that were covered by a permit obtained by the event organizer of the protest." (Doc. # 59 ¶ 2).

for picketing "in or around the exterior portions or courtyards." (Doc. # 44 at 17). It is undisputed that the area in or around the exterior portions or courtyards of the Guntersville and Albertville County Courthouses is small. (*See* Docs. # 55-5 at 2; 59 ¶ 6). Therefore, this provision does not "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," as required for a void for vagueness challenge. *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)).

Finally, regarding the 2023 Resolution, Plaintiff has not provided any evidence indicating that he engaged in protests proscribed by the 2023 Resolution; therefore, Plaintiff also lacks standing to pursue this void for vagueness claim. Additionally, the terms of the 2023 Resolution are just as clear as those of the 2020 Resolution. For example, while the 2020 Resolution uses the terms "in or around the exterior portions or courtyards" (Doc. # 44 at 17), the 2023 Resolution uses "at, near, or proximately around." (*Id.* at 24). Defendants have presented undisputed evidence that at least one building covered by the 2023 Resolution contains "no place to picket around the immediate exterior of these buildings . . . i.e., a lawn." (Doc. # 56 at 6). Therefore, for the same reason that Plaintiff lacks standing to pursue a void for vagueness claim under the 2020 Resolution, he also lacks standing to pursue this claim under the 2023 Resolution.

**B.   Facial Challenge**

Plaintiff's challenge to the 2020 and 2023 Resolutions is a facial (rather than as-applied) challenge under the First Amendment. Plaintiff concedes that he never attempted to obtain a picketing permit (*see* Doc. # 55-3 ¶ 6), so Plaintiff cannot challenge the 2020 or 2023 Resolutions as applied to him. Although facial claims are cognizable under the First Amendment, for the reasons discussed below, Plaintiff has failed to show why a facial challenge for overbreadth has any merit here.

The Supreme Court has noted that "[f]or a host of good reasons, courts usually handle constitutional claims case by case, not en masse." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008)). This is because "'facial challenges threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quoting *Washington State Grange*, 552 U.S. at 451).

"There are two quite different ways in which a statute or ordinance may be considered invalid 'on its face' – either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Id.* at 796. Plaintiff does not claim that the 2020 and 2023 Resolutions are unconstitutional in every conceivable application. For example, he concedes that the interior of government offices are generally nonpublic forums.[5] (Doc. # 55-3 ¶ 13). Instead, Plaintiff focuses on the theory that the 2020 and 2023 Resolutions are overbroad in the expressive activities they cover.

"The overbreadth doctrine prohibits the [g]overnment from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). "An overbreadth challenge is unusual." *United States v. Hansen*, 599 U.S. 762, 769 (2023). As the Supreme Court has explained:

> Because it destroys some good along with the bad, "[i]nvalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Williams*, 553 U.S. at 293 []. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 14 [] (1988); *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 [] (1984).

---

[5] Specifically, Plaintiff contends that "[t]he interior of government offices would be nonpublic forums unless previously opened up as a public forum." (Doc. # 55-3 ¶ 13).

16

*Hansen*, 599 U.S. at 770. But, the "'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *VoteAmerica v. Raffensperger*, 696 F. Supp. 3d 1217, 1237 (N.D. Ga. 2023) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). A statute may be invalidated as overbroad "in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129-30 (1992) (internal citations omitted).

Because a facial challenge to a statute under the First Amendment is "extraordinary," the Supreme Court has held that these challenges are only permitted where there is unbridled discretion in a government official to permit or deny expressive activity. *Ward v. Rock Against Racism*, 491 U.S. 781, 973-94 (1989). Therefore, the relevant questions in a facial challenge are: (1) whether every application of the 2020 and 2023 Resolutions creates a risk of suppressing ideas, such as through delegating overly broad discretion to a decisionmaker, and (2) whether the 2020 and 2023 Resolutions sweep too broadly, penalizing a substantial amount of constitutionally protected speech.

First, there are undisputed facts indicating that neither of the two Resolutions at issue here delegates overly broad discretion to the relevant decisionmaker, the Marshall County Commission Chairman. A government can avoid a finding of unbridled discretion if "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license" contains "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-51 (1969). The 2020 Resolution imposes multiple "narrow, objective, and

definite standards" on the Chairman's discretion. That Resolution instructs that the Chairman "shall issue a permit upon the submission of a Registration upon finding" that the Registration does not conflict with another picketing permit for the same time, day, and location, and that the Registration complies with a written list of rules in the Resolution. (Doc. # 44 at 18-19). None of the rules pertain to the content or viewpoint of the planned picketing. (*See id.* at 3-5). For example, the rules require that the place and manner of picketing not block entrances, use certain amplified sounds, affix signs to buildings, carry weapons, or use chalk or paint on the courthouse buildings and sidewalks. (*See id.* at 4-5). The 2020 Resolution also specifies that issuance of a permit is "without regard to the viewpoint of the proposed Picketing." (*Id.* at 18). If two applications conflict with one another in the time and place of picketing, the Chairman will issue the permits "on a first come[,] first serve[d] basis." (*Id.* at 19). These standards are objective; they leave not a whiff of room for any subjective judgment by the Chairman as to whether one picket seems more worthy than another; nor do they permit the Chairman to prefer the viewpoint of one picket over another. If applications comply with the written rules, the only question is which application was filed first.

Finally, the 2020 Resolution imposes a time limit of seventy-two hours for approval of a Permit application, and it deems any applications that have been pending for longer than seventy-two hours to be "granted." (*Id.* at 19). This rule even further constrains the Chairman's discretion, as the Chairman is not permitted to passively deny an application simply because of some disagreement with it; if the Chairman does not promptly move on the application, the default result is that it is granted. The only discretion that the 2020 Resolution grants to the Chairman is to "exercise objective, nonbiased adjustments in the event one individual, group, or organization has not had an equal opportunity to engage in Picketing due to conflicts," and thus to give such a registrant "priority for a given date and time over the first registrant." (*Id.*). This discretion is

narrow and limited by objective standards. To exercise this judgment, a Chairman would answer either "yes" or "no" to the question of whether a permit applicant had previous been denied a permit due to a scheduling conflict. Nothing about the process of the rule is subjective. Therefore, as to the 2020 Resolution, the undisputed facts indicate that no reasonable jury could find that it delegates overly broad discretion to the Chairman as decisionmaker.

The 2023 Resolution is even narrower. It simply forbids all picketing at, near, or proximately around given locations. The only plausible discretion allowed by the 2023 Resolution is that exercised by enforcement officials in determining what is "at, near, or around." But, as discussed above, these words are not vague. Even if they could be seen as granting some discretion to law enforcement who are determining whether picketers have violated the 2023 Resolution, this discretion is not "unbridled" and thus cannot serve as a basis for a facial challenge of the 2023 Resolution.

Second, there are undisputed facts indicating that neither of the Resolutions at issue here sweeps too broadly or penalizes a substantial amount of constitutionally protected speech. In cases such as this one, where "conduct and not merely speech is involved," the Supreme Court has held that "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Where a statute "seeks to regulate political activity in an even-handed and neutral manner," it is not overbroad. *Id.* at 616. The Supreme Court has found a regulation to sweep too broadly where it banned all "First Amendment activities within" an airport. *Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 571 (1987). In creating such a "First Amendment Free Zone," the law went beyond "merely regulat[ing] expressive activity . . . that might create problems such as congestion or the disruption of the activities of those who use [the airport]." *Id.*

at 574. Therefore, without deciding whether the airport was a public or nonpublic forum, the Court held that the resolution was facially unconstitutional. *Id.* at 575.

Both the 2020 and 2023 Resolutions are viewpoint neutral and thus comply with the rule in *Broadrick* – they regulate political activity in an "even-handed and neutral manner." 413 U.S. at 616. The 2020 Resolution prohibits all picketing regardless of viewpoint inside the courthouses, and it requires permits for all picketing, which in turn are issued regardless of viewpoint. (Doc. # 44 at 18). The 2023 Resolution similarly prohibits all picketing (regardless of viewpoint) at, near, or proximately around specified properties. (*Id.* at 24). Further, both Resolutions are distinct from the resolutions at issue in *Jews for Jesus*.

Even within the two courthouses and the county properties in the 2023 Resolutions, there is no "First Amendment Free Zone." Parties, audience members, and attorneys are still permitted to express whatever viewpoint they wish inside the courthouses, as long as it is not in the form of picketing. The same is true of people visiting the Marshall County Animal Control Shelter, the Marshall County Sheriff's Office, or any of the other properties listed in the 2023 Resolution. Outside the courthouses, picketing is allowed as long as picketers apply for and comply with the requirements for a picketing permit.

Finally, unlike the resolutions in *Jews for Jesus*, which did not "merely regulate expressive activity . . . that might create problems such as congestion or the disruption of the activities of those who use [the airport]," 482 U.S. at 574, the 2020 and 2023 Resolutions regulate the expressive activity of picketing *precisely* because of concerns that it could cause congestion outside the county properties, disrupt the activities of those properties (for example, by keeping animals at the shelter calm), or cause violence through the clashes between two simultaneously protesting groups. (*See* Doc. # 55-4 ¶ 2).

Neither of the Resolutions in contest have grants unbridled discretion to a decisionmaker, and the law is clear that these regulations do not sweep too broadly to merit a facial challenge. For these reasons, a facial challenge to the 2020 and 2023 Resolutions fails.

### C.    Forum Analysis

It is "well settled that the government need not permit all forms of speech on property that it owns and controls." *International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (citing *Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981)). Courts thus apply a "forum based" approach for analyzing government regulations on the use of government-owned property. The Supreme Court has recognized four kinds of forums: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum. *McDonough v. Garcia*, 2024 WL 4195557, at *4 (11th Cir. 2024).

The first category is the traditional public forum, which is property that "has traditionally been available for public expression," and regulations of speech in this forum are "subject to the highest scrutiny." *International Soc. for Krishna Consciousness, Inc.*, 505 U.S. at 678. "Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). With a traditional public forum, "[t]he government may enforce regulations as to time, place and manner of expression as long as the regulations are: (i) necessary to serve a compelling state interest; (ii) content neutral; (iii) narrowly tailored to serve a significant government interest; and (iv) open to ample alternative channels of communication." *United States v. Gilbert*, 130 F.3d 1458, 1461 (11th Cir. 1997).

The second category of government property is a designated public forum, which is "government property that has not traditionally been regarded as a public forum [but] is

intentionally opened up for that purpose." *International Soc. for Krishna Consciousness, Inc.*, 505 U.S. at 678 (citing *Cornelius*, 473 U.S. at 802). "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." *Cornelius*, 473 U.S. at 802. This second category is subject to the same strict scrutiny as a traditional public forum. *Id.* at 678.

The third category is a limited public forum. "[A] limited public forum may be established when the government limits its property 'to use by certain groups or dedicate[s it] solely to the discussion of certain subjects." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, 130 S. Ct. 2971, 2984 n.11 (2011)). A government can restrict speech in a limited public forum if those restrictions are "viewpoint neutral and 'reasonable in light of the purpose served by the forum.'" *McDonough v. Garcia*, 2024 WL 4195557, at *6 (11th Cir. 2024) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

The fourth category is a nonpublic forum. "[A] nonpublic forum is property for which the government 'act[s] as a proprietor, managing its internal operations.'" *Keister v. Bell*, 29 F.4th 1239, 1251 (11th Cir. 2022) (quoting *Barrett v. Walker Cnty. School District*, 872 F.3d 1209, 1224 (11th Cir. 2017)). Examples of nonpublic forums include "mailboxes, military bases, or jails." *McDonough*, 2024 WL 4195557, at *7. A government can restrict speech in a nonpublic forum if those restrictions are "reasonable in light of the purpose served by the forum," *Min. Voters All. v. Mansky*, 585 U.S. 1, 13 (2018) (quoting *Cornelius*, 473 U.S. at 806), and are "not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). In that sense, the restrictions "must avoid the haphazard and arbitrary enforcement of speech restrictions in order for them to be upheld as

reasonable." *Cambridge Christian School, Inc. v. Fla. High School Athletic Ass'n, Inc.*, 942 F.3d 1215, 1243 (11th Cir. 2019).

### 1. 2020 Resolution

The 2020 Resolution regulates picketing both inside and "in and around the exterior portions or courtyards of" the Guntersville and Albertville County Courthouses.

There can be no genuine dispute that the interiors of these courthouses are nonpublic forums. A courthouse is "property for which the government 'act[s] as a proprietor, managing its internal operations.'" *Keister*, 29 F.4th at 1251 (quoting *Barrett v. Walker Cnty. School District*, 872 F.3d 1209, 1224 (11th Cir. 2017)). And, as Plaintiff concedes, the interiors of government offices are generally nonpublic forums. (Doc. # 55-3 ¶ 11). Despite this concession, Plaintiff argues that the Guntersville courthouse complex is a "mixed forum" because there is a public restaurant, an atrium in which the public can meet with the County Commissioner, other public offices, and courtrooms. (Doc. # 59 ¶ 6). Defendants counter that Plaintiff "does not provide either authority for or explanation of this concept" of a mixed forum. (Doc. # 60 at 2). Defendants further note that "the fact that a restaurant may be one of the conveniences available inside a courthouse still does not transform it into anything other than a nonpublic fora, and courthouses are not the only type of government building to which access may be restricted." (*Id.*). In support of this argument, Defendants cite *United States v. Gilbert*, in which the Eleventh Circuit affirmed a lower court's holding that the interior of a courthouse with a cafeteria was a nonpublic forum. 920 F.2d 878, 884 (11th Cir. 1991). The court agrees with Defendants. Simply placing a cafeteria or other amenity inside of a courthouse does not transform it from government property that is not designated for public communication to one that is. Therefore, the interiors of the courthouses covered by the 2020 Resolution are nonpublic forums.

Because the interiors of the courthouses are nonpublic forums, Marshall County can restrict expressive activity there "as long as the restrictions are reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius*, 473 U.S. at 800 (internal quotation marks omitted). In other words, the restrictions must be viewpoint neutral and reasonable. Again, the 2020 Resolution is explicitly viewpoint neutral. It is also reasonable. The Supreme Court has held that a regulation was reasonable under this standard where a regulation forbidding repetitive solicitation in airport terminals avoided the disruptive effect that solicitation can have on business. *International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683-84 (1992). Similarly, a regulation prohibiting solicitation on the premises of a post office was reasonable because solicitation would be "inherently disruptive of the Postal Service's business." *United States v. Kokinda*, 497 U.S. 720, 727 (1990). Here, the prohibition on picketing within the Guntersville and Albertville courthouses was reasonable. The principal purpose of a courthouse is to conduct judicial business. This requires order and peace – requirements that picketing would likely disrupt.

The parties disagree about whether the courthouse exteriors are limited or designated public forums. Plaintiff argues that "Defendants have also constructed numerous fences and security barriers to prevent protesters from using public spaces . . . [b]y making the sidewalks the only space available, it imposes unnecessary barriers to assembly and causes the protests to interrupt business which under [the 2020 and 2023] Resolutions carry a penalty." (Doc. # 44 ¶ 39). Plaintiff further argues that "Defendants repeatedly change the Forum of the public spaces by opening them up for speech they deem favorable[] as a Designated Public Forum, then again closing the Forum to public speech (Non-Public Forum) to prevent any opposing views and/or protesters." (Doc. # 44 ¶ 40) (omitting footnote that gave the example of speech deemed favorable:

"Recent erection of Fraternal Order of Police monument and brick sale," *id.* n.4). In their Motion for Summary Judgment, Defendants counter that "[t]he immediately adjacent exteriors that exist only to facilitate access to such nonpublic forum[s] are also themselves nonpublic." (Doc. # 56 at 11). Plaintiff responds that because there is limited space outside the "county properties," presumably including the Guntersville and Albertville Courthouses, this "limited space is actually a rationale for preserving these spaces as a public square as much as possible, because as shown by the map there is no other place to safely protest." (Doc. # 59 ¶¶ 6-7). Finally, Plaintiff asserts a right to "protest within sight and sound of" areas like "the public restaurant" or the state Veterans Affairs Office. (*Id.* ¶ 6).

The court agrees with Defendants that the exteriors of the courthouses covered by the 2020 Resolution are limited public forums. "[A] limited public forum may be established when the government limits its property 'to use by certain groups or dedicate[s it] solely to the discussion of certain subjects." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, 130 S. Ct. 2971, 2984 n.11 (2011)). This is precisely what Marshall County did by regulating picketing on the courthouse grounds and requiring individuals or groups to receive a permit before they may picket.

Plaintiff has not rebutted Defendants' argument that the exteriors of the Albertville and Guntersville courthouses are limited public forums. Plaintiff asserted in his Amended Complaint that the exteriors of the Guntersville and Albertville courthouses were designated public forums (Doc. # 44 ¶ 40), and that "the exterior of public buildings (sidewalks, parks) would be considered traditional public forums." (Doc. # 55-3 ¶ 13). On the other hand, Defendants have shown that Plaintiff's allegation is unsupported. They have cited case law holding that ingress and egress

walkways into a post office were nonpublic. *United States v. Belsky*, 799 F.2d 1485, 1488-89 (11th Cir. 1986). The Supreme Court has also weighed in on this issue. The Court has ruled that the building and grounds have "not been traditionally held open for the use of the public for expressive activities," while holding that the municipal sidewalks around the outer perimeter of the Supreme Court complex were traditional public forums. *United States v. Grace*, 461 U.S. 171, 178-83 (1983).

Plaintiff also contends that Marshall County has surrendered its right to operate the exterior of its courthouses as limited public forums because the County has constructed fences around monuments outside the courthouses. (Doc. # 44 ¶ 39). But, this point misses the mark legally. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." *Cornelius*, 473 U.S. at 802. Marshall County did not open the exterior of its courthouses for public discourse by placing fences around its monuments; if anything, the addition of fencing indicates an intention to control and limit public discourse that might occur through defacing these monuments.

Plaintiff would further have the court recognize a new right to protest "within sight and sound of" a county-owned building such as a courthouse. (Doc. # 59 ¶ 6). But no such right has ever been recognized by the Supreme Court or the Eleventh Circuit, and Plaintiff has not cited any case law to support the existence of such a right.

Finally, Plaintiff seems to argue that the presence of public monuments that support certain viewpoints (such as, at the Albertville Courthouse, flags, monuments to veterans of World War I, World War II, the Korean War, and the Vietnam War as well as a monument to confederate soldiers) have transformed the exteriors of these courthouses into designated public forums. (Docs.

# 59 ¶ 8; 55-5 at 3; 55-10 at 2). Specifically, Plaintiff's Amended Complaint cites to the Fraternal Order of Police Monument in claiming that "Defendants repeatedly change the Forum of the public spaces by opening them up for speech they deem to be favorable as a Designated Public Forum." (Doc. # 44 ¶ 40). Plaintiff further argues (in his Response to Defendants' Motion for Summary Judgment) that as long as there are "never-ending wars . . . represented by the courthouse monuments . . . there will be people wanting to protest both sides and it is the duty of the government to accommodate those protests." (Doc. # 59 ¶ 8). But again, Plaintiff has not cited any legal support for imposing such a duty. And indeed, there is none. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). Therefore, the presence of donated monuments on land owned by a municipality does not require the municipality to allow other speech or monuments. *Id.* at 468.

A government can restrict speech in a limited public forum if those restrictions are "viewpoint neutral and 'reasonable in light of the purpose served by the forum.'" *McDonough v. Garcia*, 2024 WL 4195557, at *6 (11th Cir. 2024) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). As noted above, the 2020 Resolution is explicitly viewpoint neutral. Further, the permit requirement in the 2020 Resolution is reasonable in the light of the purpose served by the forum. The purpose of the outside of a courthouse, including the yard and sidewalks leading into the building, is to permit ingress and egress to the court building. In response to Plaintiff's Interrogatory, Defendants explained that the "2020 Resolution was enacted in the wake of the violent counter protest by Sons of the Confederacy against Black Lives Matter protesters after the death of Travis Banks in the Guntersville City Jail." (Doc. # 55-4 at 2). Defendants also noted that they were concerned about space constraints if there were multiple

protests at the same time, as well as the potential for violence due to "[t]he increase in reports from around the nation of violence occurring in such protests/counter-protests." (*Id.*). Although Plaintiff initially alleged that the 2020 Resolution was "created and passed out of animus" (Doc. # 44 ¶ 28), he has not pointed to any Rule 56 evidence suggesting that is so, and has not rebutted Defendants' explanation of Marshall County's motivation for the 2020 Resolution. (*See* Doc. # 59).

The summary judgment record establishes that the County's restrictions on picketing outside the courthouses were reasonable. As that record indicates (and as even Plaintiff himself argues), the outdoor space around the Albertville and Guntersville courthouses is limited; therefore, allowing more than one picket at a time could disrupt the ability of people to access the courthouses. Like the postal service building in *Kokinda* or the airport in *International Soc. for Krishna Consciousness, Inc.*, the Marshall County courthouses serve an important purpose that could be disrupted by unregulated picketing. Moreover, the 2020 Resolution is far from an outright ban on picketing. It allows anyone who wishes to picket the right to apply for a permit to do so, as many times as they wish, and for no fee. Although Plaintiff argues that the 2020 Resolution is unconstitutional because it does not allow for "rapid-response organizing," Plaintiff has not presented any evidence to support the claim that filing a permit with the Marshall County Commission Chairman would prevent such rapid response organizing. (Doc. # 44 ¶ 21). Indeed, the Rule 56 evidence supports just the opposite conclusion. The one-page form to apply for a permit is simple, there is a three day window in which the Chairman must address each application, and there is no record of the Chairman denying or unreasonably delaying the issuance of any permits. (*See* Doc. # 55-9 at 2-11). Therefore, considering the purpose and limitations of the 2020 Resolution, it is a viewpoint neutral and reasonable regulation of expressive activity in the limited

public forum of the courthouse exteriors. For these reasons, the court concludes that the 2020 Resolution is constitutional.

### 2.   2023 Resolution

The 2023 Resolution "prohibit[s] Picketing[] . . . at, in, or around the property of the County, which is not a public forum." (Doc. # 44 at 24). To that end, the 2023 Resolution prohibits picketing "at, near, or proximately around" the following forums:

> the Marshall County Animal Control Shelter, the County Commission District Offices, the Marshall County Sheriff's Office, the Marshall County Jail, the Marshall County District Attorney Annex, the Marshall County Probate Office Annexes, and any other property owned, operated, and/or maintained by the County Commission which is not open to the general public.

(Doc. # 44 at 24).

As with the 2020 Resolution, there can be no genuine dispute that the interiors of the properties referenced in the 2023 Resolution are nonpublic forums. Plaintiff concedes that the interiors of government offices are generally nonpublic forums. (Doc. # 55-3 ¶ 11). But, Plaintiff argues that "Defendants repeatedly change the forum of the public spaces by opening them up for speech they deem to be favorable as a Designated Public Forum, then again closing the Forum to public speech (Non-Public Forum) to prevent any opposing views and/or protesters." (Doc. # 44 ¶ 40) (footnote omitted). Defendants argue that the properties covered by the 2023 Resolution are "not public forums," and they highlight that Plaintiff "has presented no evidence that any of the additional locations listed in the 2023 Resolution are or have ever been anything other than nonpublic fora." (Doc. # 56 at 11).

The court agrees with Defendants that the interiors of the properties enumerated in the 2023 Resolution are nonpublic forums. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley*

*v. Florida*, 385 U.S. 39, 47 (1966). The text of the 2023 Resolution explicitly notes the desire to prohibit picketing at county property "which is not a public forum." As the Supreme Court has explained, "[t]he government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." *Cornelius*, 473 U.S. at 802. To that end, if Marshall County cannot by "inaction" create a designated public forum, Marshall County's *action* of labeling the 2023 Resolution properties as nonpublic forums properly classifies those properties as nonpublic forums. Further, Plaintiff has presented no Rule 56 evidence that Marshall County ever opened any of these properties "for public discourse." To the contrary, as Defendants have noted, the "[p]eaceful protests being organized at the animal shelter" that Plaintiff references in his Amended Complaint took place at the courthouse and not at the shelter. (*See* Docs. # 44 ¶ 38; 56 at 12). Plaintiff has not successfully rebutted this point. He has merely responded that he "was not . . . aware of a break-in at the animal shelter." (Doc. # 59 ¶ 1). Because there is no evidence that any of the 2023 Resolution properties were ever opened for public discourse, the interiors of the properties are nonpublic forums.

The exteriors of these properties are also nonpublic forums. As Defendants point out, the Marshall County Sheriff's Office has "no place to picket around the immediate exterior of these buildings that would not interfere with operations, i.e., a lawn; however, there are public streets and sidewalks nearby." (Doc. # 56 ¶¶ 13, 16). Plaintiff's response is that because there is limited space outside the "county properties," this "limited space is actually a rationale for preserving these spaces as a public square as much as possible, because as shown by the map there is no other place to safely protest." (Doc. # 59 ¶¶ 6-7). But for the same reason discussed in conjunction with the 2020 Resolution, this argument has no legal support. In a discovery response, Plaintiff asserted

that "[e]very location on the courthouse protest route used by the Plaintiff (such as the county jail and administrative buildings) was covered by the 2023 Resolution." (Doc. # 55-3 ¶ 15). This point, too, lacks legal support. The fact that a protest proceeded past 2023 Resolution properties does not transform those properties into designated or traditional public forums. The Supreme Court has held that the fact that "members of the public are permitted freely to visit a place owned or operated by the Government" does not transform that place into a public forum. *Greer v. Spock*, 424 U.S. 828, 836 (1976). As Plaintiff has not presented any summary judgment evidence that the exteriors of the 2023 Resolution properties were ever opened for public discourse, they are nonpublic forums.

As nonpublic forums, the 2023 Resolution properties may be subject to regulations that are viewpoint neutral and reasonable. *See Cornelius*, 473 U.S. at 800. An outright prohibition on picketing is viewpoint neutral. It prohibits pickets both in favor of and against a given issue. Therefore, the relevant question is whether it is reasonable to prohibit picketing at these properties. There is undisputed evidence that this prohibition is reasonable. In response to Plaintiff's Interrogatories, Defendants indicated that the motivation for passing the 2023 Resolution was to "make it clear after the break-in at the Animal Shelter that certain County properties are not generally open to the public for all purposes," to "ensure the continued provision of services at locations that are not public forums," to avoid requiring those in buildings like the County Jail to "bear witness to the protest," and to protect animals at the County Animal Shelter from being upset by loud noises and crowds. (Doc. # 55-4 ¶ 2). Plaintiff has not disputed in any way that this was Defendants' primary motivation for passing the 2023 Resolution. (*See* Doc. # 59).

Given this undisputed Rule 56 evidence, prohibiting picketing on these properties is reasonable. The purpose of an animal shelter is to house animals who are often nervous or scared.

Allowing the shouting of a picket inside or near an animal shelter would interfere with this service by disrupting these animals. The purpose of a jail is to house inmates who are awaiting arraignment or trial or serving sentences. Allowing the shouting of a picket inside or near a jail forces inmates – who are unable to leave – to listen to shouting and noise may prove disruptive. Allowing a picket outside the Marshall County Sheriff's Office, which has "no place to picket around the immediate exterior of these buildings that would not interfere with operations," would disrupt the Sheriff's ability to conduct law enforcement activities for the county. (Doc. # 56 ¶¶ 13, 16). This list of explanations could continue, but the point is this: it was reasonable for the county to prohibit picketing inside and near municipal-owned buildings to prevent the disruption of services in those buildings. Like the postal service building in *Kokinda* or the airport in *International Soc. for Krishna Consciousness, Inc.*, the 2023 Resolution properties could be disrupted by picketing.

Finally, even though this prohibition on picketing constitutes an outright ban, it restricts picketing on only a narrow portion of property. As Defendants note, "the public sidewalks and streets outside these locations may still be available for picketing." (Doc. # 56 at 12). To the extent that picketers desire to make their views known while being near certain county-owned properties, they are still free to use the public sidewalks and streets.

The 2023 Resolution is both viewpoint-neutral and a reasonable regulation of expressive activity in nonpublic forums.

**V.   Conclusion**

For the reasons discussed above, Defendants' Motion for Summary Judgment (Doc. # 54) is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this September 30, 2024.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE